UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

TERRON BELLE,

          Plaintiff,

    vs.

The CITY OF NEW YORK, POLICE OFFICERS
TAIWO ADELEKE, DAVID HERNANDEZ,
TERRENCE WILLIAMS, SERGEANTS JEAN
ISADORE, EDWIN PEREZ,
in their individual and official capacities,

          Defendants.

-----------------------------------------------------------x

**FIRST AMENDED COMPLAINT**
**13 CV 4304 (CM)**

**ECF Case**

**JURY TRIAL DEMANDED**

Plaintiff Terron Belle, by his attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.  This civil rights action arises from the arrest and detention of Terron Belle ("Plaintiff") on the false and fabricated grounds that he had an outstanding warrant, and from the malicious abuse of process that took place with respect to that "warrant." Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for unreasonable search and seizure, false arrest and imprisonment, failure to intervene, malicious abuse of process, and a *Monell* claim against the City of New York for the same constitutional violations. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district and Plaintiff resides in this district.

## JURY DEMAND

4. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5. Plaintiff Terron Belle is an African-American male, a citizen of the United States, and at all relevant times a resident of the City of New York, State of New York.

6. The individually named defendants Police Officer Taiwo Adeleke (Shield # 2404) ("PO Adeleke"), Police Officer David Hernandez ("PO Hernandez"), Police Officer Terrence Williams ("PO Williams"), Sergeant Jean Isadore ("Sgt. Isadore"), and Sergeant Edwin Perez ("Sgt. Perez") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7. Upon information and belief, on the date of the incident giving rise to this complaint, the individual defendants were assigned to the 32nd Precinct in Manhattan.

8. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law,

in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## STATEMENT OF FACTS

10. On Wednesday October 31, 2012, at around 4:00 A.M., Plaintiff Terron Belle was sleeping in his home at 267 West 152 Street, Apartment 5D, New York, NY 10039, where he lives with his mother.

11. At around 4:30 A.M., Plaintiff awoke to the sound of banging on his apartment door.

12. Plaintiff walked to the door and heard someone behind the door shout "Open the door now!"

13. When Plaintiff unlocked and opened the door, he saw a group of the individual defendants, including PO Adeleke.

14. The individual defendants stepped inside his apartment, although they did not have a warrant and Plaintiff did not give them permission.

15. The individual defendants told Plaintiff that he had an outstanding "warrant" for failing to show up to Court – also known as a "bench warrant."

16. Trying to figure out how that could be possible, Plaintiff said that he had proof that his last court case was closed; that case had been resolved about a year before when he completed a two-hour program, fully satisfying the conditions of the Adjournment in Contemplation of Dismissal (ACD) that resolved the case.

17. The individual defendants did not permit Plaintiff to retrieve such proof; instead, they arrested him inside his apartment, handcuffing him behind his back.

18. Plaintiff did nothing illegal or improper in the presence of the individual defendants.

19. There was, in fact, no warrant authorizing Plaintiff's arrest.

20. Any indication of a warrant – if any existed – was a mistake, a glitch, whose error the individual defendants manufactured, knew of, and unlawfully exploited.

21. Upon being arrested inside his apartment, Plaintiff asked to use the bathroom, for he had to urinate; but the individual defendants did not allow him to do so.

22. After being arrested, Plaintiff was removed from his apartment and placed in handcuffs inside a police van.

23. After the van filled up with other arrestees, Plaintiff was transported to the 32nd Precinct.

24. Plaintiff remained in the 32nd Precinct from about 7 AM to 3 PM (on October 31).

25. During that time, supervising officer John Doe of the 32nd Precinct spoke to Plaintiff at length in an attempt to gather crime-related information, specifically information relating to gangs, even though Plaintiff has never associated with gangs.

26. At one point, supervising officer John Doe mentioned the NYPD's "Auxiliary Program" – which Plaintiff had applied for in 2010 – and said that if Plaintiff incriminated gangsters, the Sergeant would "speed up" his application.

27. The individual defendants knowingly used an erroneous and fictitious bench warrant as a pretext to intimidate, harass, and interrogate Plaintiff and to go on a wild goose chase for information.

28. Even though the warrant was fictitious or clearly erroneous, the individual defendants arrested Plaintiff because even false arrests contribute to the individual defendants' monthly arrest quotas, which they feel great pressure to fulfill.

29. The individual defendants perverted the true purpose of a bench warrant – which is to return the subject to the issuing Court as soon as possible.

30. After questioning, Plaintiff was taken to the 28th Precinct, where he stayed for several hours.

31. At night, Plaintiff was taken to Central Booking at the New York County Criminal Court.

32. There, the individual defendants deliberately botched Plaintiff's paperwork, extending his incarceration far longer than it should have been.

33. The individual defendants failed to follow the proper protocol in returning Plaintiff to court on a bench warrant. They willfully and wrongfully delayed in taking him to a Judge with jurisdiction.

34. Consequently, Plaintiff spent the entire day of Thursday November 1, 2013 in the holding cells of Central Booking without seeing a Judge.

35. On Friday November 2, 2012, Plaintiff finally saw a Judge in Criminal Court.

36. The Judge quickly dismissed the case and indicated it should never have been brought.

37. Plaintiff was then released from custody, ending over forty-eight hours of unlawful custody.

38. As a result of his unlawful arrest and imprisonment, Plaintiff suffered emotional distress, anguish, humiliation, and degradation.

39. The NYPD failed to supervise and discipline the individual defendants despite their long histories of malicious and mendacious behavior, and their obvious patterns of reckless misconduct and abuse of power.

40. In response to the serious complaints made against the individual defendants, the NYPD failed to properly investigate, adjudicate, and impose discipline, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to violate the rights of civilians, and emboldening them to abuse their powers.

41. The NYPD's flaccid response to rogue officers constitutes an irrational custom and policy that fosters a culture of misconduct and mendacity in the NYPD.

42. Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve. But NYPD officers often face only minor discipline or no discipline whatsoever for serious wrongdoing.

43. The inadequacy of NYPD's supervision and discipline is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not being wrongfully arrested and charged.

44. On October 17, 2011, NYPD Commissioner Raymond Kelly directed the release of Operations Order No. 52, which mandates that "Department managers <u>can</u> and <u>must</u> set performance goals" related to issuing summons, questioning suspicious individuals, and arresting criminals.

45. Because arrests are rewarded, while making false arrests and fabricating charges go largely unpunished, police officers have felt incentivized to engage in false

arrests and to fabricate criminal charges; such perverse incentives become particularly destructive in the hands of undisciplined, unsupervised officers.

46. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

   b. Severe emotional trauma, distress, degradation, and suffering;

   c. Loss of income and income potential.

## SECTION 1983 CLAIMS

## FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

47. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

48. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

49. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

50. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

51. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### False Arrest Under Section 1983

52. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

53. By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

54. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

55. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Failure to Intervene Under Section 1983

56. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

57. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

58. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

59. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

**Malicious Abuse of Process Under Section 1983**

60. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein

61. By the actions described, the individual defendants deprived Plaintiff of his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

62. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

**Municipal Liability Under Section 1983**

63. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

64. By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its official policy and custom of having weak disciplinary measures for NYPD officers who have histories and propensities of abuse of power; a policy and custom of systematically ignoring credible doubts about police officers' integrity and morality; a policy and custom of failing to adequately investigate and punish misconduct, which encourages unscrupulous officers to deprive citizens of rights.

65. By failing to seriously investigate and truly assess the individual defendants' past abuses of power, and by failing to appropriately supervise and discipline them, the NYPD tacitly endorsed their reprehensible and disordered behavior, empowering them to continue such behavior.

66.     By continuing to allow the individual defendants – and other potentially malicious, dishonest, rogue officers – the power to, among other things, carry a gun, make arrests, and initiate criminal charges against New Yorkers, the Defendant City has exhibited deliberate indifference to the safety, well-being, and rights of New Yorkers.

67.     By tolerating weak and ineffectual means of supervising, regulating, sanctioning, disciplining, and monitoring malicious and mendacious officers, Defendant City has intentionally disregarded the constitutional rights of New Yorkers.

68.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

   a.   An order awarding compensatory damages for Plaintiff Terron Belle in an amount to be determined at trial;

   b.   An order awarding punitive damages in an amount to be determined at trial;

   c.   A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

   d.   Such other and further relief as this Court may deem appropriate.

DATED:   May 9, 2014                     _____s/_____
         New York, New York              CYRUS JOUBIN, ESQ.
                                         88 Pine St., 14th Fl.
                                         Suite Cohen Milstein
                                         New York, NY 10005
                                         (703) 851-2467
                                         joubinlaw@gmail.com
                                         Attorney for Terron Belle

10